**Ruth GOODWIN et al., Appellants,**

**v.**

**DISTRICT OF COLUMBIA BOARD OF
EDUCATION et al., Appellees.**

**No. 9581.**

District of Columbia Court of Appeals.

Argued July 15, 1975.

Decided Aug. 1, 1975.

John F. Mercer and Veda F. Clark, Washington, D. C., for appellants.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellees.

Before REILLY, Chief Judge, and KELLY and NEBEKER, Associate Judges.

PER CURIAM:

This appeal, pursuant to D.C.Code 1973, § 11–721(a)(2)(A), is from a denial of injunctive relief sought by appellants to prevent the District of Columbia Board of Education from using certain standards by which the Board is to evaluate the performance of the present superintendent of the schools. These standards were developed and adopted closed meetings of the Board on April 28 and May 1, 1975. Appellants contend that the public was unlawfully barred from these meetings and therefore the Board should be enjoined from using such standards. They rely principally on D.C.Code 1973, § 31–101(e), which provides, in part, that:

. . . Meetings of the Board of Education shall be open to the public; except that the Board of Education (1) may close to the public any meeting (or part thereof) dealing with the appointment, promotion, transfer, or termination of employment of, or any other related matter involving, any employee of the Board of Education, and (2) may close to the public any meeting (or part thereof) dealing with any other matter but no final policy decision on such other matter may be made by the Board of Education in a meeting (or part thereof) closed to the public. . . .

Appellants first argue that the superintendent is not an employee of the Board and therefore clause (1) of § 31–101(e) is not applicable. To support their argument, they cite § 31–105 which provides that the superintendent "shall have a seat in the board". Thus, they conclude that the relationship between the superintendent and the Board is not one of employer-employee. That section further provides, however, that the superintendent shall have "the right to speak on all matters before the board, *but not the right to vote*" (emphasis added). Clearly then, the superintendent is not one among equals on the Board. Also, we note that § 31–105 empowers the Board to appoint the superintendent and that § 31–108 empowers it to remove her. Finally, the contract between the superintendent and the Board refers to the superintendent as an employee and it outlines the procedure by which she may be discharged. We conclude, therefore, that the term "superintendent" as used in the statutory scheme and in the contract envisions an employer-employee relationship. And while the meetings in question were not held to terminate the superintendent's employment, the meetings' agenda were unquestionably "related matter" as contemplated by the statute and properly subject to closed sessions.

Appellants next contend that if the superintendent is an employee then the adoption of evaluative criteria is a final policy decision and therefore closed meetings are forbidden by clause (2) of § 31–101(e). But however critical a public issue the ultimate retention or discharge of the superintendent is, the adoption of evaluative standards is clearly not a *"final policy decision"* (emphasis added) within the meaning of the statute.[1]

---

1. It should be noted that we are not dealing here with a discharge of the superintendent at a closed meeting. Indeed, her contract pro-

vides for written charges, notice, and a hearing before any dismissal by the Board.

 While affirming the denial of preliminary injunctive relief and the entry of judgment on appellants' claim for permanent injunctive relief,[2] we are aware of D.C.Code 1973, Supp. I, Sec. 742(a) (District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. 93–198, 87 Stat. 774), which requires that:

All meetings (including hearings) of any department, agency, board, or commission of the District government, including meetings of the District Council, at which official action of any kind is taken shall be open to the public. No resolution, rule, act, regulation or other official action shall be effective unless taken, made, or enacted at such meeting.

We are also aware that Sec. 761 of the same act provides that:

To the extent that any provisions of this Act are inconsistent with the provisions of any other laws the provisions of this Act shall prevail and shall be deemed to supersede the provisions of such laws.

Upon a superficial reading of these sections it may appear that all meetings of the Board must be public. However, in granting the District an elected Board of Education, Congress discussed in depth the right of the Board to hold closed meetings and on this point the Senate report stated:

. . . The feeling of this committee is that, within limits, the school board should be in a position to develop a flexible, intelligent balance between open meetings and executive sessions in its rules and regulations. Accordingly, the committee has amended the bill to provide that while all meetings shall be open to the public, the Board of Education may at any regular or special meeting, proceed in executive session, provided that no final policy decision shall be made by the Board while in executive session. The committee believes both caution and care should be exercised in the use of executive sessions. The overall public interest should be the Board's prime criterion in its discretionary judgment. The committee did not believe the Board, responsible in the final analysis to the electorate, should be barred from executive considerations because such can serve a practical and worthwhile end. Neither should overuse of executive sessions bar too many considerations of the public business from the public view.[3]

Further, it is a well-settled principle of statutory interpretation that repeal of a law by implication is not favored[4] and that:

The enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by the general law. . . . An implied repeal of prior statutes will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to

2. Super.Ct.Civ.R. 65(a)(2): *Consolidation of Hearing with Trial on Merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. . . .

3. S.Rep.No.942, 90th Cong., 1st Sess. 6, 7 (1967).

4. 1A Sutherland, Statutory Construction § 23.10 (Sands Ed. 1972).

have contemplated only a general treatment of the subject matter by the general enactment. Therefore, where the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law. [Footnotes omitted.] [5]

Therefore, given the express intent of Congress to allow certain Board meetings to be closed and the embodiment of that intent in a specific statute, we hold that § 31–101(e) remains in effect as qualification of the later statute requiring meetings of the District government to be open to the public.

*Affirmed.*

5. *Id.* § 23.15. *See, e. g., Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed. 2d 290 (1974).